UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| EVAN SAPP, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CV-768 RLM-MGG |
| | ) | |
| WILLIAM HYATTE and | ) | |
| GEORGE PAYNE, JR., | ) | |
| | ) | |
| *Defendants* | ) | |

OPINION AND ORDER

Evan Sapp has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Sapp sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Sapp has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Sapp requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 14], GRANTS Mr. Sapp's motion

for summary judgment, [Doc. 29], and DENIES AS MOOT Mr. Sapp's request for oral argument. [Doc. 43].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, a court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't merely allege a disputed material fact to defeat summary judgment; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1] Mr. Sapp's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 12], and he requests consolidated oral argument. [Doc. 43]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Evan Sapp alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility for over forty days starting January 1, 2021. He alleges that his cell had broken lights and a window covered with sheet metal, so was extremely dark, and live wires dangled from the ceiling and shocked him. He claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Sapp sued from prison, so the defendants aren't liable if they can show that Mr. Sapp didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal

3

grievance and two appeals to exhaust a claim. The parties agree that the written policy is as follows.

A prisoner can complain about prison conditions by filing a grievance with the prison. The prison considers only certain issues appropriate for the grievance process, like staff treatment, medical or mental health, acts of reprisal, and other concerns about conditions of care and supervision in prison. A prisoner starts by completing a grievance on State Form 45471, to be completed no later than ten business days from the date of the incident giving rise to the complaint. An offender grievance specialist is to review any grievance within five business days of receiving the grievance. A specialist either rejects the grievance or accepts and records it. A grievance specialist can reject a grievance if it is untimely, relates to more than one event or issue, is illegible, and the like. A rejected grievance is returned to the prisoner with State Form 45475, "Return of Grievance." It is not appealable, but a prisoner can submit a revised State Form 45475 within five business days of when the grievance is returned.

If a grievance specialist accepts the grievance, the grievance is logged into the prison's computer system and filed with any other grievances filed by that same prisoner. The grievance is marked on the prisoner's log with "I – Formal Grievance." The grievance specialist has fifteen business days to investigate and give a response.

A prisoner who is dissatisfied with the prison's response can appeal the response with State Form 45473. Any appeal is due within five business days of the date of the grievance response. A prisoner can also appeal a grievance if

there's no response within twenty business days of when the grievance specialist received the response. An offender grievance specialist is to log the date of receipt of the appeal and forward the appeal to the warden. The warden or his designee is to review the appeal within ten business days of receiving the appeal, and the offender grievance specialist is to give a copy of the appeal response to the prisoner.

A prisoner dissatisfied with the warden's decision can lodge an appeal with the Indiana Department of Correction. The prisoner must check the "disagree" box on the warden or his designee's response and submit the response with the completed State Form 45473 and any supporting documentation. This appeal must be made to the offender grievance specialist within five business days of the warden or his designee's appeal response. A prisoner can also appeal if there's no response within ten business days of when the warden received the first-level appeal. The offender grievance specialist is to document the appeal in the grievance database, logging the prisoner's grievance history with "II – Formal Appeal." An appeal of the warden's decision is reviewed by the Department Offender Grievance Manager and is considered final.

The parties disagree over how this policy was implemented and how Mr. Sapp used the grievance process.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Sapp didn't exhaust the grievance process. Their evidence includes a declaration from

5

Michael Gapski, a grievance specialist at Miami Correctional Facility, [Doc. 14-1], the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, [Doc. 14-2], Mr. Sapp's grievance history, [Doc. 14-3], and related grievance documents, [Doc. 14-4].

Mr. Gapski reviewed documents relating to Mr. Sapp's grievance history and attests to the grievance policy just described. He then attests to Mr. Sapp's documented grievance history, explaining that Mr. Sapp didn't file a proper grievance or any appeal about his cell conditions. Mr. Sapp filed one grievance that Mr. Gapski says was properly rejected because it involved his prison classification, which isn't a matter for the grievance process, and another that Mr. Gapski says was properly rejected because it included issues not appropriate for the grievance process and related to multiple issues.

The defendants include both rejected grievances. The first is dated February 3, 2021, and complains about Mr. Sapp's placement in restrictive housing. [Doc. 14-4 at 1]. A return of grievance form explains that the grievance was rejected because it concerns classification. [Doc. 14-4 at 2].

Another grievance is dated February 3 and is signed by Mr. Sapp. [Doc. 14-4 at 3]. The grievance says:

> I am currently housed in A-dorm, cell 301. I was placed in here on 1-1-21 and I'm currently still living in cell 301. My cell has no lighting at all. The ceiling light has been gutted as well as the outside window has been replaced with some type of metal. So it's pitch black 24 hours a day, 7 days a week. This is inhumane. I can't see to eat or use the restroom. You keep placing human after human in this cell and all you['re] doing about it is telling me to file a grievance. So here's your grievance.

[Doc. 14-4 at 3].

6

The form has a section asking for relief sought, and Mr. Sapp wrote, "I would like to be treated like a human being. I'd like to be properly housed. My constitutional rights are always being violated here at your facility. I've done nothing wrong to be treated like this. Please figure this out." [Doc. 14-4 at 3]. A grievance specialist rejected the grievance with a return of grievance form on February 5, 2021. The specialist checked the box that said, "Your complaint cannot be responded to as presented, but may be corrected and submitted against within five (5) days." [Doc. 14-4 at 4]. The narrative explanation said, "Housing location is a Classification matter. Light is separate from window." [Doc. 14-4 at 4].

A copy of Mr. Sapp's grievance history log shows a single grievance in 2020 relating to safety, sanitation, and environmental conditions.

*Mr. Sapp's Account*

Mr. Sapp asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration (including copies of the rejected grievances and rejection forms that the defendants supplied), [Doc. 27-7 at 113–120], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist at Miami Correctional Facility who also served as Rule 30(b)(6) representative for the prison, [Doc. 27-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 27-2 to 27-5], and the deposition transcript of Stacy

7

Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 27-6].

According to Mr. Sapp's declaration, he filed several grievances about his cell conditions. He describes the February 3 grievance about light in his cell, and his account of the grievance and response matches the defendants' account. He says, however, that he doesn't know of anything in the grievance policy that would like a complaint about being held in darkness two separate issues just because he said both the lack of a working light and the covered window caused the darkness.

Mr. Sapp recognized that rejected grievances aren't appealable, so when he received the rejected grievance, he filed two separate grievances about his cell conditions: one about the blocked window and another about the lack of light. He received no response to these grievances.

Mr. Sapp says he filed another separate grievance about being in restrictive housing. His exhibit matches the defendants' copy. This grievance was rejected as involving classification.

Mr. Sapp claims no one ever told him he could appeal a non-response, and the rule was always that prisoners had to wait for a response to appeal.

Mr. Sapp presents Mr. Gapski's testimony as evidence that Miami Correctional Facility didn't follow department policy and made the grievance process impossible. Mr. Gapski, a grievance specialist at Miami Correctional Facility, testified as Miami Correctional Facility's Rule 30(b)(6) representative and described how grievance specialists at Miami Correctional Facility handled

the grievance process. He explained that in restrictive housing, like Mr. Sapp's unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

Mr. Gapski also described in detail how Miami Correctional Facility handles appeals. The Indiana Department of Correction policy says a prisoner can appeal the prison's response to a grievance. A prisoner can appeal the prison's response or "may appeal as though the grievance had been denied" if there's no response within twenty business days of the offender grievance specialist's receipt of the grievance. [Doc. 14-2 at 12]. The policy adds that a prisoner who wishes to file a first-level appeal must complete State Form 45473 and submit it within five business days of the date of the grievance response.

Mr. Gapski explained things differently, detailing an extra unofficial step at Miami Correctional Facility. He said that the prison responds to grievances with an Offender Grievance Response Report. That report explains the prison's response and has a spot to mark "agree" or "disagree." It isn't State Form 45473, which the written policy requires for starting an appeal. If a prisoner wants State Form 45473, he marks "disagree" on the Offender Grievance Response Report and sends it to the grievance specialists. When a grievance specialist receives

9

the report marked "disagree," the specialist sends a copy of State Form 45473 to the prisoner. That copy comes from a grievance specialist and must include the original grievance number on it. [Doc. 27-1 at 46–47]. The grievance specialists forward an appeal to the warden and send a receipt to the prisoner only once the specialists have received a completed State Form 45473.

Mr. Gapski also spoke of how timing is calculated. The grievance policy requires that a prisoner "submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident given rise to the complaint." [Doc. 14-2 at 9]. The same is true for appeals, except that a prisoner has five business days instead of ten. [Doc. 14-2 at 14]. Mr. Gapski attested that grievance specialists calculate timing based on when they receive an appeal. So an appeal is deemed untimely if not *received* within five business days. Timing doesn't depend on when a prisoner signed an appeal or handed an appeal to a correctional officer, even though prisoners often can't give an appeal directly to a grievance specialist.[2]

Mr. Sapp presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the

---

[2] The defendants contend that Mr. Gapski's testimony about timing was only about appeals and not first-level grievances, so Mr. Gapski's testimony can't be used to generalize about how appeals are handled. [Doc. 36 at 13–14].

consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

DISCUSSION

Mr. Sapp and the defendants move for summary judgment on the exhaustion defense. The governing law is thoroughly set out in the court's opinion and order on cross-motions for summary in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 11–12, which discussion the court adopts by reference.

Warden Hyatte and Deputy Warden Payne's legal argument is straightforward: the prison's policies plainly require a formal grievance and two levels of appeal. Mr. Sapp didn't file any proper grievances and appeal their responses, so he didn't exhaust administrative remedies.

Mr. Sapp makes two similarly straightforward arguments: first, the prison improperly rejected his grievance about his cell condition and there were no further steps to take for an improper rejection, so he exhausted administrative remedies with that grievance; and second, he submitted grievances about his cell condition that received no response, and appealing a nonresponse was practically impossible, so he exhausted administrative remedies.

Approaching from Mr. Sapp's perspective makes for a clearer picture.

11

Mr. Sapp's first argument focuses on the rejected grievance. While the grievance specialist concluded that it dealt with multiple issues, Mr. Sapp argues that the grievance was clearly about a single issue — the cell's darkness. He said, "[m]y cell has no light at all," then explained that the light and window caused the darkness. That the darkness was caused by the broken light and the covered window wouldn't make darkness two separate issues. Mr. Sapp proposes that because the grievance really dealt with one issue, not multiple, it was improperly rejected. There's no way to appeal a rejected grievance, so he exhausted all necessary steps.

The defendants don't offer much of a response other than asserting that the grievance specialist "reasonably concluded that a broken window and a broken light fixture were two separate issues." [Doc. 37 at 6–7]. They don't cite any language in the policy clarifying when an issue is considered multiple issues or why a reasonable conclusion deserves deference.

The court needn't decide whether the grievance was improperly rejected because Mr. Sapp's second argument resolves the issue. He claims in his deposition that after the grievance was rejected, he submitted two grievances about his cell conditions. Neither received a response, so he concludes that no further steps were available. *See* Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002).

This argument appears initially to hit a snag with the grievance policy. A prisoner must follow any prison rules that require administrative appeals, id.

12

(citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (2002)), and Miami Correctional Facility's policy required that prisoners appeal non-responses.

According to policy, a prisoner unhappy with the grievance specialist's response must appeal the response within five business days by completing State Form 45473. If there's no response within twenty business days of when the grievance specialist received the grievance, the prisoner can appeal as if there'd been a response. Once the appeal is filed, the warden must respond within ten business days of receiving the appeal. Then, once the warden responds, a prisoner can appeal to central office within five business days of the warden's response. If the warden doesn't respond within ten business days, a prisoner can appeal the warden's non-response. A prisoner appeals the warden's decision or non-response by checking "disagree" on the response and completing State Form 45473. Under these rules, Mr. Sapp exhausted administrative remedies only if he appealed the warden's lack of a response to his appeal.

This appeals process makes little sense. The policy requires that a prisoner who doesn't get a response to a grievance file an appeal, but a prisoner can file an appeal only by filing State Form 45473. Mr. Gapski describes an unauthorized step requiring a prisoner to first mark another form with "disagree" before receiving State Form 45473. But a prisoner can't mark "disagree" on a form he never receives. This is a dead end.

The defendants insist that Miami Correctional Facility recognizes only the official policy, contrary to what Mr. Gapski says. But even if the prison follows the written policy to a tee, appeals are unavailable for non-responses. The policy

13

tells prisoners to appeal as if the grievance had been denied but doesn't say how a prisoner is to get a copy of State Form 45473,[3] much less how a prisoner in restrictive housing, like Mr. Sapp was, is to get ahold of State Form 45473.

The same deficiencies apply to the second-level appeal. Policy dictates that a prisoner starts a second-level appeal by marking the warden's first-level response with "disagree." The defendants and the policy don't explain how a prisoner who receives no response to the first-level appeal can mark "disagree" on the warden's response that never came and that might not even exist.

If Mr. Sapp is believed, he has exhausted *available* remedies. The grievance policy required that Mr. Sapp appeal the non-response of his appeal. That appeal was made impossible because Miami Correctional Facility required that Mr. Sapp check "disagree" on the response that he never received and submit State Form 45473. Nothing in the written grievance policy tells a prisoner how to appeal if he never receives a response. Ultimately, the policy's rules about appeals are "based on the assumption that the prisoner has received a response to his original grievance," and doesn't account for non-responses. Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *8–9 (S.D. Ind. Jan. 10, 2011). This policy gap means "there is no adequate appeals process," so Mr. Sapp "cannot be faulted for failing to appeal." Id. (citing Dole v. Chandler, 438 F.3d

---

[3] Mr. Sapp asserts that the only way a prisoner gets State Form 45473 is to receive one from a grievance specialist after completing the unofficial and unauthorized step. The defendants object to this assertion as not supported by Mr. Gapski's testimony — he said that State Form 45473 comes from him but didn't exactly say that there was no other way to get the form. [Doc. 27-1 at 47]. Still, the defendants never explain how a prisoner who doesn't receive a response can get State Form 45473, nor does the written policy address this crucial step.

804, 809–810 (7th Cir. 2006)). Mr. Sapp is entitled to judgment on the affirmative defense unless the defendants can somehow prove they're nevertheless entitled to judgment or can show that there's a genuine dispute of material fact requiring a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

Warden Hyatte and Deputy Warden Payne raise several arguments about why Mr. Sapp didn't exhaust administrative remedies. First, they argue that other prisoners successfully finished the entire process, so it must have been fully available to Mr. Sapp. They cite evidence that Mr. Blanchard, a plaintiff in a consolidated case, 3:21-CV-160, completed all three steps. If Mr. Blanchard could complete each step, so could Mr. Sapp.

That the prison logged and responded to another prisoner's grievances and appeals doesn't contradict Mr. Sapp's claims. Mr. Sapp claims that *his* appeal didn't receive a response, not that no grievance ever received a response. He includes evidence of systemic failures to bolster his claim, but his claim rests on his declaration. And Mr. Blanchard received responses, so he, unlike Mr. Sapp, didn't face the impossible task of appealing a non-response when an appeal requires a form that comes only with a response.

The defendants then argue that administrative remedies were available because Mr. Sapp received information about the process during admission and orientation. This argument doesn't respond to Mr. Sapp's because his argument doesn't hinge on whether he was ever told what the policy required on paper. Mr. Sapp's knowledge of the policies wouldn't make it possible to overcome the demand of appealing a non-response with the response that never arrived. Mr.

Sapp's knowledge of the procedure doesn't show that he failed to exhaust by not appealing when he's shown that appealing non-responses was impossible in practice.

The defendants argue that Mr. Sapp's description of the two grievances that went unanswered is too vague. The declaration says Mr. Sapp submitted two timely grievances about the blocked window and broken light. The defendants suggest more detail is required, like which prison official took Mr. Sapp's grievances. The declaration describes the timing and content of the grievances, so they're not too vague to support Mr. Sapp's account at summary judgment.

Finally, the defendants argue that Mr. Sapp didn't fully exhaust administrative remedies because he didn't appeal the non-responses. As explained before, appealing non-responses was impossible because the policy required a copy of the response. A prisoner who doesn't receive a response can't use the response he doesn't possess. Appeals weren't available to Mr. Sapp.

Ultimately, the defendants' claim — that their own records show no appeal — is consistent with Mr. Sapp's version of events. As Judge Barker, in a similar case, explained:

> Although there is no record of any of these grievances in the prison database, that record is obviously only accurate as to the grievances that are actually inputted into the system by prison officials. In other words, even if a prisoner properly submits a grievance to an appropriate prison official, if the prison grievance specialist does not receive it, either because it is lost or forgotten, or if the grievance specialist fails for some other reason to input the grievance into the system, there would be no record of it having been filed.

16

Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *6–7 (S.D. Ind. Jan. 10, 2011). The defendants' argument that the absence of evidence is conclusive evidence of absence doesn't contradict Mr. Sapp's evidence that administrative remedies weren't available. The defendants' evidence is consistent with Mr. Sapp's claims, so doesn't create a genuine issue as to whether administrative remedies were available to Mr. Sapp. Administrative remedies weren't available to Mr. Sapp, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr. Sapp's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Sapp's motion for summary judgment without a Pavey hearing.

Mr. Sapp requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Sapp's motion for summary judgment; REJECTS the

exhaustion defense; and DENIES AS MOOT Mr. Sapp's motion for consolidated oral argument.

SO ORDERED.

ENTERED:   August 15, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court